IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**WM CAPITAL PARTNERS 53, LLC**,
    Appellant

v.   Civil No. 17–2015 (ADC/BJM)

**ALLIED FINANCIAL INC.**,
    Appellee.

## REPORT AND RECOMMENDATION

After the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of R-G Premier Bank ("R-G"), the FDIC sold R-G's assets, which included Allied Financial Inc.'s ("Allied") loan, to Scotiabank de Puerto Rico ("Scotiabank"). Docket No. 1–3 ("Order") at 1–2. Scotiabank filed a complaint for collection of monies against Allied in the Puerto Rico Court of First Instance three years later in 2013. Docket No. 3–2 at 7. In 2015, Scotiabank sought and received the FDIC's permission to sell some of its commercial loan-assets, including Allied's loan, to a third party and subsequently sold Allied's loan to WM Capital Partners 53, LLC ("WM"). Order at 2. WM then substituted itself as the plaintiff in Scotiabank's lawsuit. *Id.* Allied filed for bankruptcy on January 15, 2016. Order at 3. Two months later, Allied filed an adversarial proceeding in bankruptcy court against WM seeking to exercise its right of redemption under Puerto Rico law and essentially buy back its loan for the price WM paid to Scotiabank. Order at 2–3. Both parties moved for summary judgment; the bankruptcy court denied summary judgment for WM and granted partial summary judgment for Allied. WM now asks this court to grant an interlocutory appeal on the bankruptcy court's grant of partial summary judgment. Docket No. 3–2. Specifically, WM seeks an interlocutory appeal of the court's finding that federal law does not preempt the applicability of the law of Puerto Rico granting debtors the right of redemption under certain circumstances. Docket No. 3–2 at 12. Allied opposes. Docket No. 3–1. This matter was referred to me for a report and recommendation. Docket No. 5. For the reasons set forth below, WM's motion for leave to pursue an interlocutory appeal should be **DENIED**.

## DISCUSSION

"This Court has jurisdiction to review bankruptcy court's decisions pursuant to 28 U.S.C. § 158(a). In pertinent part, 28 U.S.C. § 158(a) provides that '[t]he district courts of the United States shall have jurisdiction to hear appeals: (1) from final judgments, orders, and decrees; (2) ...; and (3) with leave of the court, from other interlocutory orders and decrees.'" *Rodriguez-Borges v. Lugo-Mender*, 938 F. Supp. 2d 202, 207 (D.P.R. 2013) (quoting 28 U.S.C. § 158(a)). Both parties have agreed that WM is seeking an appeal of an interlocutory order, not a final judgment. Docket Nos. 3–1 at 1; 3–2 at 10. Consequently, it is within the court's discretion whether to entertain the appeal.

"The First Circuit has made clear that the [a]pplication of [section] 158(a)(3) review of interlocutory orders mirrors application of [28 U.S.C.] § 1292(b)." *In re Martinez*, 541 B.R. 539, 541 (D.P.R. 2015) (internal citations omitted). Therefore, the court must consider the three elements presented in 28 U.S.C. § 1292(b) in deciding whether or not to exercise its discretion to grant the interlocutory appeal: "whether (1) the order involves a controlling question of law (2) as to which there is substantial ground for difference of opinion, and (3) whether an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Martinez*, 541 B.R. at 541 (quoting *In re Watson*, 309 B.R. 652, 659 (1st Cir. BAP 2004)), *aff'd*, 403 F.3d 1 (1st Cir. 2005). The party seeking the appeal bears the burden of proof and must prove all three elements. *See In re Bank of New England Corp.*, 218 B.R. 643, 652–54 (B.A.P. 1st Cir. 1998) (analyzing each separate element); *In re Cent. Louisiana Grain Co-op., Inc.*, 489 B.R. 403, 410 (W.D. La. 2013) (appellant bears burden of proof on all three elements). In its analysis, the court must be mindful that "[o]nly rare cases will qualify for the statutory anodyne; indeed, it is apodictic in [the First Circuit] that interlocutory certification of this sort should be used sparingly and only in exceptional circumstances[.]" *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1010 n. 1 (1st Cir. 1988) (internal quotations omitted); *see United States v. Sampson*, 58 F. Supp. 3d 136, 148 (D. Mass. 2012) ("Certification under § 1292(b) must be rare because appellate review is generally limited to final decisions precisely in order to avoid piecemeal litigation, promote

judicial efficiency, reduce the cost of litigation, and eliminate the delays caused by interlocutory appeals." (internal quotation omitted)).

The first element is whether the bankruptcy court's ruling that the right of redemption was not preempted by federal law "presents a question of law that controls the outcome of the underlying case." *In re Bank of New England Corp.*, 218 B.R. at 652. Here, Allied filed an adversarial proceeding in the bankruptcy court seeking to exercise its right of redemption under Article 1425 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 3950 ("Article 1425"). The right of redemption seeks to prevent "financial speculation in litigation" by allowing a debtor to "reimburse the interest of a third party (assignee) who has purchased a stake in the outcome of a civil case, also known as a 'litigated credit.'" Order at 6–7. WM seeks to prove that Allied's right of redemption under Article 1425 is preempted by federal law, specifically the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") that guides the actions of the FDIC when dealing with failed bank assets. *Id.* at 11–12. As such, the court's ruling presents a question of law that controls the outcome of this case because if Allied's cause of action, the right of redemption, is preempted by federal law then the adversarial proceeding must be dismissed. Allied has not presented any other causes of action other than its right of redemption nor did it argue in its opposition that there was another law under which it would seek to bring its claim. Therefore, WM meets the first factor as reversing the court's ruling would be dispositive to this case.

The second element is whether the bankruptcy court's ruling involved "a legal issue on which there is 'substantial ground for difference of opinion.'" *In re Bank of New England Corp.*, 218 B.R. at 652 (quoting § 1292(b)). The difference of opinion must "arise out of a genuine doubt as to the correct applicable legal standard relied on in the order." *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005); *see California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 96 (2d Cir. 2004) ("By its plain terms, Section 1292(b) may only be used to challenge legal determinations."); *In re Poseidon Pool & Spa Recreational, Inc.*, 443 B.R. 271, 279 (E.D.N.Y. 2010) (no ground for appeal when movant's "actual argument appears to be that the

Trustee failed to make out a prima facie case of insolvency, and Judge Eisenberg should have found the Trustee's evidence less persuasive"). Furthermore, it is not enough that the appellant is dissatisfied with the bankruptcy court's decision, including how it weighed the evidence, as that does not present a legal issue. *See In re Martinez*, 541 B.R. at 544 ("Even though counsel for Debtor would have liked the Bankruptcy Court to have ruled differently, this does not convert the court's ruling to one that merits this court's immediate review."); *In re Cent. Louisiana Grain Co-op., Inc.*, 489 B.R. at 412 ("[S]imply because a court is the first to rule on a question or counsel disagrees on the applicable precedent does not qualify the issue as one over which there is substantial disagreement. Further, a substantial ground for difference of opinion does not exist because a party simply claims the bankruptcy court ruled incorrectly." (internal quotations omitted)); *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 386 (M.D. Pa. 2007) (appellant did not establish a genuine ground for difference of opinion based on its "dissatisfaction" with the bankruptcy court's decision).

WM failed to meet its burden to prove the second element on two grounds: it failed to identify a true legal issue, and it failed to identify a "substantial ground" for disagreement even if its arguments are assumed to raise a legal issue. The issue in this case is whether the bankruptcy court appropriately found that Article 1425 is subject to conflict preemption because it fatally conflicts with the FDIC's objectives as described in FIRREA.

"In all pre-emption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Order at 11 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). There are three types of federal preemption; one, conflict preemption, applies when a state law "stands as an obstacle to achieving the objective of the federal law[,]" creating an "actual conflict" between it and the federal law. *Id.* at 10–11, 18. The bankruptcy court understood WM's argument to be one of conflict preemption. *Id.* at 11. Specifically, the court explained, "WM claims that Article 1425 interferes with the FDIC's roles as receiver and administrator of a failed bank's assets

and with the FDIC's statutory obligation to resolve the failed bank's affairs in the least costly way possible to its fund." *Id.* at 11.

After substantial analysis, the bankruptcy court found that "Article 1425 does not stand as an obstacle to the FDIC's objectives because the FDIC concurred in Scotiabank's sale of various loan assets to WM, resulting in the least costly resolution of the failed bank's assets." *Id.* at 14–15. In addition, because WM is not party to nor protected by the Loan Share Agreement ("LSA") between the FDIC and Scotiabank, the FDIC's obligations to pay Scotiabank are not related to WM's future receipt of payment from Allied:

> There is no indication that, subsequent to the FDIC's approval for Scotiabank to sell loan-assets to third parties, the FDIC continues to administer or otherwise have a pecuniary interest in the loan-assets sold to WM, pursuant to the LSA. Thus, there is no legal basis to declare Article 1425's redemption right preempted absent clear indication—rather than speculative or conjectural—of conflict between the FDIC's objectives and Article 1425.

*Id.* at 15. In sum, the court found that the "FDIC does not share losses with WM and WM owes no duty to the FDIC." *Id.*

WM does not contest that its only argument is under conflict preemption as opposed to express preemption or field preemption. *Id.* at 11 ("WM's argument encompasses conflict preemption[.]"); Docket No. 3–2 at 13, 17 (WM only presented arguments regarding conflict preemption in its motion). Similarly, WM does not meaningfully contest that the bankruptcy court applied the correct standard for conflict preemption. Docket No. 3–2 at 13 (providing the same standard for conflict preemption as the bankruptcy court applied). WM does very briefly argue that there is no presumption that a state statute is valid if the federal law at issue concerns "the actions of a federal agency." *Id.* at 20. WM cites no case law for this claim other than *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987), which makes no mention of such an argument. Docket No. 3–2 at 20–21. Moreover, it is well-established First Circuit and Supreme Court law that "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace the state law" regardless of whether a federal agency is involved.

WM Capital Partners 53, LLC v. Allied Financial, Inc., Civil No. 17–2015 (ADC/BJM)                                   6

*Maryland v. Louisiana*, 451 U.S. 725, 746, (1981); *see Pharm. Research & Mfrs. of Am. v. Concannon*, 249 F.3d 66, 74–75 (1st Cir. 2001), *aff'd sub nom. Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644 (2003) ("[W]e assume that the historic police powers of the States [are] not to be superceded by ... Federal Act unless that [is] the clear and manifest purpose of Congress. We also recognize that federal preemption of a state law is strong medicine, and is not casually to be dispensed." (internal citations omitted)). To the extent that WM did not waive this argument through its cursory analysis and lack of case law support, WM has not met its burden of proof to show that there is any ground for dispute as to the legal standard for conflict preemption. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Rather than contest the legal standards that the bankruptcy court applied, WM argues that it did not sufficiently appreciate that if redemption rights are valid, then third-party institutions, like WM, will not be willing to pay as much for assets subject to a loan share agreement, resulting in an obstacle to the FDIC's objective to resolve the affairs of failed banks in the least costly way possible. *See* Docket No. 3–2 at 16. The bankruptcy judge, however, addressed this argument at length and found that redemption rights, as applied in this case to a third-party assignee, would have no direct effect on the FDIC or create an actual conflict with its objectives. *See* Order at 15. Moreover, she found that Scotiabank alerted WM to the fact that redemption rights may be exercised prior to WM's purchase; WM's choice to follow through on the sale anyway rather diminishes the specter of what financial institutions may do if redemption rights are applied. *See Id.* at 18 ("In the Loan Sale Agreement between Scotiabank and WM, Scotiabank placed WM on notice of the possible redemption right actions that could ensue from its purchase of loan-assets with pending litigation. This provision forewarned WM of a potential claim of redemption under

Article 1425.").[1] Thus, WM's concerns are strictly that the court did not give proper weight to the possible effect that redemption rights could have on the FDIC's future resolution of failed banks' affairs. *See* Docket No. 3–2 at 21 ("WM submits that the Bankruptcy Court did not weigh the role of the shared-loss guarantee and the impact the exercise of the Right of Redemption could have in future dealings of the FDIC in Puerto Rico."). Whether valid or not, such arguments cannot form the basis for an interlocutory appeal. *See In re Poseidon Pool & Spa Recreational, Inc.*, 443 B.R. at 279 ("Whether the Bankruptcy Court properly weighed the evidence in finding that the Trustee made out a prima facie case is a factual issue, not a legal issue, and therefore is not appropriate for interlocutory appeal.").

Furthermore, even if WM's claims do raise a legal issue, WM failed to show that there is a substantial ground for difference of opinion on the question. WM cited several state court decisions from Puerto Rico and Louisiana, the only other state with right of redemption laws, where the court found redemption rights to be pre-empted by FIRREA. Docket No. 3–2 at 17–18. However, the majority of those cases dealt with "the FDIC's assignment of failed bank assets to an acquiring institution" as opposed to the interactions between the acquiring institution and a third party (like WM). Order at 19. As the lack of any relationship between the FDIC and WM as a third party was the crux of the bankruptcy court's analysis, the court found those cases to be "inapposite to the court's analysis." *Id.* WM did also cite four cases, three from the Puerto Rico trial court and one from the Puerto Rico appellate court, that are relevant to this case as they address federal preemption of the right of redemption in light of the relationship between the FDIC and third parties. *Id.* at 20. The trial court and the appellate court found that the FDIC's involvement rendered Article 1425 preempted by federal law. *Id.* at 21. However, the bankruptcy court chose not to rely on those cases for three reasons: the Puerto Rico courts did not explain how Article

---

[1] WM also argues that the bankruptcy court's grant of partial summary judgment was erroneous because WM did not waive its ability to raise preemption as a defense to a right of redemption claim. See Docket No. 3-2 at 21. In fact, the bankruptcy court never suggested that WM did waive preemption and only focused on the contractual language to show that WM did not have a relationship with the FDIC. As the court never raised waiver, I will not address this argument.

1425 is in actual conflict with the FDIC's objectives; they wrongly assumed that a "commonplace" method of selling nonperforming loan-assets known as sealed-bid auctions was "unique to the FDIC" and therefore the use of it weighed in favor of preemption; and they applied the wrong test for conflict preemption by ignoring the presumption that a state law, such as Article 1425, is valid until rebutted. *Id.* at 21–23. These differences are significant enough that these decisions are not enough to prove that there is substantial grounds for a difference of opinion when applying the correct conflict preemption standard. In its motion for leave to appeal, WM failed to identify any decisions by a court that both dealt with third-party assignee and used the correct legal standard for conflict preemption. Therefore, WM failed to demonstrate that there exists a substantial ground for difference of opinion on whether Article 1425 is preempted by federal law when pursued by a debtor against a third-party assignee. As a sister court in the First Circuit explained, "the bankruptcy court correctly articulated the standard within this circuit regarding [conflict preemption]. Furthermore, a claim of misapplied law, coupled with a claim of a dispute among the circuits, is not the stuff of which interlocutory appeals are made since such a claim may be appealed on the merits." *In re Jackson Brook Inst., Inc.*, 280 B.R. 1, 8 (D. Me. 2002) (internal citations omitted).

The third element in an interlocutory appeal analysis is whether the appeal would "materially advance the ultimate termination of the litigation." *In re Bank of New England Corp.*, 218 B.R. at 654 (quoting § 1292(b)). It is clear that this appeal would materially advance the litigation because a reversal of the bankruptcy court's decision and a holding that federal law preempts Article 1425 in this case would end Allied's claim. Although Allied's original bankruptcy claim would continue, it would no longer be able to seek a right of redemption from WM. This is sufficiently dispositive to qualify as materially advancing the litigation. *Cf. In re Martinez*, 541 B.R. at 544 (denial of attorney's request to be a notary would not "materially advance the ultimate termination of the litigation") *and State Ins. Fund Corp. v. Medsci Diagnostics, Inc.*, No. BR 10–00094 ESL, 2012 WL 827116, at *3 (D.P.R. Mar. 9, 2012) (no appeal when issue would "not materially advance the determination of SIF's ultimate financial liability to Medsci, because the

question of damages and obligations (yet to be decided by the bankruptcy court) would remain regardless").

## CONCLUSION

As WM could not prove the second element required for a motion for leave to file an interlocutory appeal, WM's motion for leave to appeal should be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. The time period to file objections has been shortened to: March 23, 2018. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 15th day of March 2018.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge